UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHELL NIGERIA EXPLORATION AND PRODUCTION COMPANY LTD, ESSO EXPLORATION AND PRODUCTION NIGERIA (DEEPWATER) LTD, NIGERIAN AGIP EXPLORATION LTD and TOTAL E&P NIGERIA LTD,

        Petitioners,

    v.

NIGERIAN NATIONAL PETROLEUM CORPORATION,

        Respondent.

Civil Action No. _____

---

## PETITION TO CONFIRM ARBITRAL AWARD

Petitioners Shell Nigeria Exploration and Production Company Ltd, Esso Exploration and Production Nigeria (Deepwater) Ltd, Nigerian Agip Exploration Ltd, and Total E&P Nigeria Ltd (collectively, "Petitioners"), by and through their attorneys, petition for entry of an order and judgment pursuant to 9 U.S.C. § 207 (i) recognizing and confirming the partial final arbitral award dated May 30, 2013 (the "Partial Final Award") in the arbitration between Petitioners and Respondent Nigerian National Petroleum Corporation ("NNPC") captioned *SNEPCo et ors v. NNPC* (the "Arbitration"); (ii) entering judgment in Petitioners' favor against NNPC in the amount of $1,416,932,000, plus interest and the costs of this proceeding; and (iii) awarding Petitioners such other and further relief as the Court deems just and proper.

### PARTIES

1.    Petitioner Shell Nigeria Exploration and Production Company Ltd ("SNEPCo") is a company incorporated under the laws of the Federal Republic of Nigeria with its registered office at No. 21/22 Freeman House, Marina, Lagos, Nigeria. SNEPCo is a member of the Shell

group of companies and is 99.9% owned by Shell Petroleum N.V., a company incorporated under the laws of the Netherlands, which is in turn wholly owned by Royal Dutch Shell plc., a company incorporated under the laws of England and Wales.

2.     Petitioner Esso Exploration and Production Nigeria (Deepwater) Ltd is a company incorporated under the laws of the Federal Republic of Nigeria with its registered office at Mobil House, Lekki Expressway, Victoria Island, Lagos, Nigeria.  Esso Exploration and Production Nigeria (Deepwater) Ltd is a member of the ExxonMobil group of companies and is a wholly owned subsidiary of Exxon Mobil Corporation, a company incorporated under the laws of the state of New Jersey.

3.     Petitioner Nigerian Agip Exploration Ltd is a company incorporated under the laws of the Federal Republic of Nigeria with its registered office at No. 40/42 Aguiyi Ironsi Street, Maitama, Abuja, Nigeria (formerly Plot PC 23, Engineering Close, Victoria Island, Lagos, Nigeria).  Nigerian Agip Exploration Ltd is a member of the Eni group of companies and is 99.9% owned by Eni International B.V., a company incorporated under the laws of the Netherlands, which is, in turn, wholly owned by Eni S.p.A., a company incorporated under the laws of Italy.

4.     Petitioner Total E&P Nigeria Ltd is a company incorporated under the laws of the Federal Republic of Nigeria with its registered office at Plot 256 Herbert Macaulay Way Federal Capital Territory Abuja (formerly No. 35 Kofo Abayomi Street, Victoria Island, Lagos, Nigeria). Total E&P Nigeria Ltd is a member of the Total group of companies and is 99.9% owned by Total E&P Holdings S.A.S., which is, in turn, 65.83% owned by Total S.A., both companies incorporated under the laws of France.

5.     Respondent NNPC is a corporation created by statute under the laws of the Federal Republic of Nigeria with its head office at NNPC Towers, Herbert Macaulay Way, Central

Business District, Abuja, Nigeria. NNPC was established by the Nigerian National Petroleum Corporation Act 1977, CAP. N123, Laws of the Federation of Nigeria, 2004. It is wholly owned by the Federal Government of Nigeria and is responsible for managing Nigerian state-owned petroleum assets.

6. Upon information and belief, NNPC is the owner of one or more bank accounts held at a bank in New York.

**JURISDICTION AND VENUE**

7. Petitioners seek confirmation of the Partial Final Award, which resulted from the Arbitration between Petitioners and NNPC seated in Abuja, Nigeria, under the rules of the Nigerian Arbitration and Conciliation Act 1990, CAP A18, Laws of the Federation of Nigeria, 2004.

8. The United States and the Federal Republic of Nigeria are signatories to the 1958 United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), which governs "the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between persons, whether physical or legal." New York Convention art. I.

9. This Court has original subject matter jurisdiction over this Petition pursuant to 9 U.S.C. § 203, which vests the federal district courts with original jurisdiction over a proceeding falling under the New York Convention.

10. NNPC is an instrumentality of a foreign state under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*, and therefore would be immune from the jurisdiction of this Court except as provided in the FSIA.

11. NNPC is not immune from the jurisdiction of this Court for purposes of this Petition because the FSIA denies immunity to an instrumentality of a foreign state in an action to confirm a foreign arbitral award. Specifically, the FSIA provides that a foreign state is not immune to jurisdiction in a suit

> either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards.

28 U.S.C. § 1605(a)(6).

12. This Court also has original subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a), which vests the federal district courts with original jurisdiction over any nonjury civil action against an instrumentality of a foreign state if the foreign instrumentality is not entitled to sovereign immunity.

13. This Court has personal jurisdiction over NNPC pursuant to 28 U.S.C. § 1330(b), which vests the federal district courts with personal jurisdiction over an instrumentality of a foreign state not entitled to sovereign immunity. This Court also has *quasi in rem* jurisdiction based upon NNPC's bank accounts in New York.

14. Venue is proper in this Court pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391(b).

**FACTUAL BACKGROUND**

15. On April 19, 1993, SNEPCo and NNPC entered into a 30-year Production Sharing Contract (the "PSC"), a duly certified copy of which is attached as Exhibit 2 to the accompanying Declaration of James Dingley dated May 26, 2016 (the "Dingley Declaration" or "Dingley Decl."), pursuant to which SNEPCo agreed to explore a particular deep offshore

territory and, if it discovered commercial oil reserves there, to develop those reserves on behalf of itself and NNPC.

16. The PSC includes an arbitration clause (the "Arbitration Clause") at page 33, which provides in relevant part:

> If a difference or dispute arises between the CORPORATION [NNPC] and the CONTRACTOR [Petitioners], concerning the interpretation or enforcement of this Contract [PSC], and if the parties fail to settle such difference or dispute by amicable agreement, then either Party may serve on the other a demand for arbitration. . . . The arbitration award shall be binding upon the parties and the expenses shall be borne by the parties in such proportion and manner as may be provided in the award.  The Nigerian Arbitration and Conciliation Act Cap 19, Laws of the Federation of Nigeria, 1990 shall apply to this contract.  The venue of the arbitration shall be anywhere in Nigeria as agreed by the parties.

17. SNEPCo later assigned a portion of its interest in the PSC among the other Petitioners, who thereby became parties to the PSC.

18. Disputes subsequently arose between Petitioners and NNPC concerning the proper allocation of oil and the preparation and filing of tax documentation under the PSC.  On September 23, 2009, Petitioners commenced the Arbitration pursuant to the Arbitration Clause.

19. A panel of three arbitrators (the "Arbitral Tribunal") was appointed on December 21, 2009, and over the course of the next two years the parties submitted evidence and briefed arguments to the Arbitral Tribunal.  The parties agreed that the seat of arbitration would be in Abuja, Nigeria, but that arbitration hearings could take place outside of Nigeria.

20. On September 9, 2011, Nigeria's federal taxing authority, the Federal Inland Revenue Service ("FIRS"), filed a suit against Petitioners and NNPC in the Federal High Court of Nigeria (the "Nigerian Federal High Court") seeking, among other relief, declarations prohibiting Petitioners and NNPC from benefiting from any award issued by the Arbitral Tribunal.

21. On November 21, 2011, the Arbitral Tribunal held an oral hearing in South Africa. The parties submitted post-hearing briefs to the Arbitral Tribunal in January 2012.

22. On May 4, 2012, the Nigerian Federal High Court issued a judgment in favor of the FIRS (the "Nigerian Federal High Court Judgment"), which, among other things, restrains the parties "from continuing with, or purporting to take any benefit from or abiding by any obligations or rights no matter howsoever described or arising from the arbitral proceedings or awards made pursuant thereto."  Petitioners have appealed the Nigerian Federal High Court Judgment, and that appeal remains pending in Nigeria.

23. On May 30, 2013, the Arbitral Tribunal issued the Partial Final Award, a duly certified copy of which is attached as Exhibit 1 to the Dingley Declaration.  The Partial Final Award grants Petitioners damages, *inter alia*, in the following amounts:

   a. $102,207,000 as compensation for oil misappropriated by NNPC;

   b. $71,828,000 as compensation for oil improperly denied Petitioners by NNPC in payment of the costs of development and production;

   c. $86,585,000 as compensation for oil taken by NNPC in excess of its entitlement under the PSC for payment of royalties;

   d. $917,664,00 as compensation for oil taken by NNPC in excess of its entitlement under the PSC for payment of taxes; and

   e. $238,648,000 as compensation for NNPC's improper refusal to credit certain costs to Petitioners for purposes of tax returns filed during the disputed period.

The total amount awarded to Petitioners in the Partial Final Award is $1,416,932,000.

24. The Partial Final Award states that it is final with regard to the matters that it resolves, including the damages awards listed above, and is "partial" only insofar as it reserves judgment on certain other issues that, the Arbitral Tribunal noted, may or may not ever arise again and in respect of which further submissions were requested from the parties.  (*See* Dingley

Decl., Ex. 1, at 316 ¶¶ 13.8.46-13.8.47 (reserving judgment on tax oil calculation claim pending further submissions "to be made when, *if at all*, the Parties are permitted to do so" (emphasis added)); *id.* at 329 ¶ 13.9.28 (reserving judgment on stabilization claim to "give the Claimants a chance to digest this Partial Final Award and to revert within four weeks of the date when the Parties are permitted to make further submissions . . . as to *whether it still maintains this claim and why*" (emphasis added)).)  Due to the Nigerian Federal High Court Judgment, the parties have been unable to file the further submissions requested by the Arbitral Tribunal.

25. On June 25, 2013, NNPC filed an action (the "Set-Aside Action") in the Nigerian Federal High Court, seeking to set aside the Partial Final Award.  Petitioners subsequently sought a stay of the Set-Aside Action, pending the outcome of their appeal from the Nigerian Federal High Court Judgment, and the Nigerian Federal High Court granted Petitioners' request on October 30, 2013.  The Set-Aside Action remains stayed.

## REQUEST FOR RELIEF

26. Article III of the New York Convention requires every signatory state to recognize arbitral awards as binding and to enforce them in accordance with the enforcing state's own procedural rules.

27. The United States implements the New York Convention through section 207 of the Federal Arbitration Act ("FAA"), which provides that, upon application by any party to an arbitral award under the New York Convention, a court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207.  An application to confirm an award under section 207 of the FAA must be filed within three years of the date of the award.

28.  No grounds exist for refusal or deferral of recognition or enforcement of the Partial Final Award.

WHEREFORE, Petitioners respectfully request that this Court enter an order and judgment (i) recognizing and confirming the Partial Final Award; (ii) entering judgment in favor of Petitioners and against NNPC in the amount of $1,416,932,000, plus interest and the costs of this proceeding; and (iii) awarding Petitioners such other and further relief as the Court deems just and proper.

Dated: May 26, 2016
       New York, New York

Respectfully submitted,

S/   Jeff E. Butler
_____

Jeff E. Butler
Sarah A. Sulkowski
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-8000
Facsimile: (212) 878-8375

*Attorneys for Petitioners*
